(116 App. Div. 734)

## MEADER v. BROWN.

(Supreme Court, Appellate Division, Second Department. January 11, 1907.)

BROKERS—RIGHT TO COMPENSATION.

> Where plaintiff was employed to sell a vested remainder owned by defendant for $55,000 net to the defendant, the purchaser to receive $175,000 if the life tenant should live less than 10 years, and $195,000 if she should live more than 11 years, and the purchaser to be required to reassign to the defendant $10,000 if the life tenant should die within 11 years, $20,000 if within 10 years, $25,000 if within 9 years, and $28,000 if within 8 years, and a purchaser accepted a proposition to buy an interest of $195,000, with certain contingent sums to be reassigned on the death of the life tenant within 10 years, not corresponding to those provided in the terms of the contract with plaintiff, the plaintiff was not entitled to recover the agreed compensation for his services.

> [Ed. Note.—For cases in point, see Cent. Dig. vol. 8, Brokers, § 66.]

Appeal from Trial Term, Kings County.

Action by John F. Meader against Clarence E. Brown. From a judgment in favor of plaintiff, defendant appeals. Reversed.

The complaint is for services in procuring for the defendant a purchaser for a share in a vested remainder owned by him in property devised and bequeathed by his grandfather and father to him, dependent on a life estate therein in his mother.

Argued before WOODWARD, JENKS, HOOKER, RICH, and GAYNOR, JJ.

R. Robertson, for appellant.
Stephen C. Baldwin, for respondent.

PER CURIAM. The defendant had a vested remainder in real property devised to him by his grandfather, and in real and personal property devised to him by his father, dependent in each case on an estate therein to his mother for her life. She is still living. He employed the plaintiff by a written contract to negotiate a sale of a share therein for $55,000 net to the defendant, such share to be $175,000 if the life tenant, then 67 years old, should live less than 10 years, and $195,000 if she should live more than 11 years. The purchaser had also to agree to abate or reassign back to the defendant $10,000 if the life tenant should die within 11 years, $20,000 if within 10 years, $25,-000 if within 9 years, and $28,000 if within 8 years. Any sum in excess of $55,000 paid by the purchaser was to be paid to the plaintiff for his compensation and to defray all expenses of the transaction. Such was the contract. The contract not being denied, the sole question of fact was whether the plaintiff had negotiated a sale—procured a purchaser—according to its terms. The evidence on that head was all that was relevant, and would cover only a few pages. This sole question of the case seems to have been much neglected by the plain-

tiff's side, and almost altogether by the defendant's side, while much irrelevant examination of witnesses was persisted in by both and especially the latter.

There is no evidence that a purchaser was procured on the defendant's said terms. The evidence of the attorney for the so-called purchasers is all that we have on that head. It discloses no offer or readiness to purchase on the said terms. He only testifies that he accepted a proposition to buy an interest of $195,000 in the defendant's vested remainder, which provided that, "if the life tenant lived beyond 10 years, the whole $195,000 was to remain the property of my client." He then testified to contingent sums to be abated or reassigned to the defendant on the death of the life tenant, which do not correspond to those provided for in the said terms of the defendant at all. His testimony on the subject is quite unintelligible. He held in his hand while testifying the proposition of sale made to him by the broker who worked with the plaintiff in the transaction and his acceptance of it in writing, but neither counsel looked at it or offered it in evidence. There were only two other witnesses, the plaintiff and his said associate broker, but neither was asked for or gave the terms of the sale which they claimed to have made. The defendant introduced no evidence, and excepted to the denial of his motion at the close to dismiss, which should have been granted, and to the direction of a verdict for the plaintiff.

It was testified that the sale price was $135,000. Deduct from this the $55,000 which the defendant was to get, and $80,000 is left. This, according to testimony, was to be disposed of by the purchasers by purchasing for $60,750 for themselves an annuity on the life of the life tenant which would be equal to annual interest at 5 per cent. on the said so-called purchase price of $135,000, viz., $6,750, and giving the balance of $19,250 to the plaintiff for his compensation, less $4,000 to be kept by the attorney for the purchasers. The defendant's mother refused to join in the application for such annuity, and it fell through. Then it is testified the purchasers were willing to keep the price of the said annuity in lieu of the annuity itself, and deposit it or invest it at interest. As the defendant was simply selling an interest in his estate for the sum of $55,000 net, to be paid presently, and was never to get any more, it is not apparent why the purchasers should say the purchase price was $135,000 and mix up the purchase of an annuity by the use of $60,750 thereof. Much time was taken up with this strange feature, but it was not explained. The sale was for $55,000, plus the plaintiff's compensation, and that is all there was of it. The purchasers could buy annuities as they liked. What had the defendant to do with that, and why was the purchase price to him fixed as $135,000? It does appear by the testimony of the associate broker of the plaintiff that the proposition in writing which the attorney for the purchasers accepted was submitted to the said attorney in the first week of May, whereas the agreement was got from the defendant to sell for $55,000 on May 10th. It was essential to know when the attorney accepted, for he testified that he did not know of the agreement of the defendant with the plaintiff to sell his interest for $55,-

000. If he had known of it, would he have offered to buy for $135,-000? And was the agreement procured after such offer was made? Attention is called to these matters only for the purposes of the next trial.

The judgment should be reversed.

Judgment reversed, and new trial granted; costs to abide the event.